Matthew M. Levy, J.
On June 1, 1954, the Joint Board of Cloak, Suit, Skirt and Reefer Makers’ Union, the International Ladies’ Garment Workers’ Union (the parent body of the joint board) and the Infants’ and Children’s Coat Association, Inc., entered into a five-year collective agreement, continuing a contractual relationship of many years. Among other things, the contract provides for a retirement fund for the workers in the coat and suit industry in New York City and the metropolitan area. The fund is administered by a board of trustees consisting of representatives of the union and of the employer associations in the industry and of a chairman. It is the collecting agency for itself, and is maintained entirely by employer contributions. Each employer (who is a member of an association under collective agreement with the union) is required to pay to the fund 4 Jo of the total weekly payroll of “ his inside shop ” and of “ the shops of his contractors and sub-manufacturers ”. Subsidiary, auxiliary and affiliated firms or corporations of members of the association shall, for the purpose of the agreement, be deemed to be members of the association and bound by all the terms of this agreement. The agreement provides in the broadest and most complete terms for the arbitration of “ all complaints, disputes or grievances ” arising thereunder. Arbitration machinery and procedures are set up. The office of the impartial chairman is established. The impartial chairman is empowered to determine the existence of an alleged subsidiary, auxiliary or affiliate of a member firm. He is given the power to conduct investigations and to examine the books and records of all members of the association.
Reisman Coat Corp. is a member of the association and was and is bound by the terms of the agreements. After due notice to Reisman, and due hearing, the impartial chairman rendered a decision on March 15, 1954, in which he determined that Re-Anne Manufacturing Corp. is a subsidiary, auxiliary and affiliate of Reisman, and that Reisman produce the books and records of Re-Anne for examination to determine the amounts due to the retirement fund by Reisman occasioned by the manufacturing activities of Re-Anne. Reisman failed to comply, and on June 22, 1955, the impartial chairman, after due notice and hearing, rendered a decision in which he held that Reisman had failed to comply with the earlier direction, and awarded $2,500 as liquidated damages for the failure of Reisman to produce the books and records. Under the" award, too, the rights and privileges of Reisman in the collective agreement were forfeited and the union was “ [f]ree to take any action it may deem appropriate to enforce the right¿ of the workers *719 against such firm ”. Further proceedings are still pending before the impartial chairman to determine the amounts due to the fund from Reisman. On August 19, 1955, the impartial chairman issued subpoenas duces tecum, directed to the Chemical Bank and Trust Company and to the Manufacturers Trust Company, with reference to the bank accounts of Re-Anne, which subpoenas called for the production before him of:
" 1. All resolutions filed by Re-Anne Manufacturing Corp.,
‘ ‘ 2. All signature cards filed by Re-Anne Manufacturing Corp.,
“ 3. Monthly statements from January 1954 to date, re account of Re-Anne Manufacturing Corp.
‘ ‘ 4. Photo static copies or transcripts of all checks issued by Re-Anne Manufacturing Corp. at any time.”
Re-Anne has moved before me to vacate the subpoenas on the grounds that there is no authority vested in the impartial chairman to issue the subpoenas — because Re-Anne is an independent corporate entity in no way connected with Reisman; that it is not a party to the collective agreement; that it was not a party to the proceedings before the impartial chairman; that it did not attend the hearings before him; that it is not bound by his awards; that it has no agreement with the association and is in no way affiliated with the union or the retirement fund; that its books are private; that the records sought are not material or relevant; and that the impartial chairman is engaging in a “ fishing expedition ” to learn the business affairs and functions of Re-Anne, a complete stranger to the collective arrangements in the industry. The respondents on these motions consent to the deletion of items 1 and 2 requesting the production of resolutions and signature cards, to limiting the production of the photo static copies or transcripts of checks issued by Re-Anne (as specified in item 4) during the months of September, 1950, February, 1951, September, 1952, and February, 1953, on the Manufacturers account, and to the period from January 1, 1954, to August 25, 1955, on the Chemical account, and, with respect to the monthly statements (item 3), to a modification so that the Re-Anne income may be omitted. But the issue remains — and is pressed by the petitioner — whether the subpoenas, thus modified, should not be vacated altogether.
I agree with the petitioner that an arbitrator — that in effect is what the impartial chairman here is — “ has no power to make a valid and binding award against one not a party to the submission or the agreement ” (Matter of Sun-Ray Cloak Co., 256 App. Div. 620, 624). The fact that the impartial chairman has ruled, therefore, that Re-Anne is a subsidiary of Reisman *720 does not suffice to make Re-Anne a party to the agreement between the union and the association. Re-Anne is not thus made subject' to the agreement so that it must on the basis thereof submit its records to the chairman’s inspection or its affairs to his investigation. In the absence of judicial confirmation of the chairman’s decision (determined in a special proceeding under the arbitration law, Civ. Prac. Act, art. 84), the court is not bound to adopt — indeed, it cannot ipso facto invoke ■— the chairman’s decision that Re-Anne, as a Reisman subsidiary, is a party to the collective agreement. But, contrary to the contention of the petitioner, that does not dispose of the question, for an arbitrator can compel even one not a party to the agreement to produce books and records if such documents are shown to be pertinent, material or necessary to any matter lawfully under consideration before him (Civ. Prac. Act, §§ 406, 1456; Matter of Sun-Ray Cloak Co., 256 App. Div. 620, supra). The subpoena, issued in a proper case, can reach not only parties to the controversy, not only parties to the collective agreement, . but strangers as well.
The present investigation before the impartial chairman is concerned with establishing the amounts owed to the fund by Reisman, a member of the association and a party to the collective agreement. That Reisman itself is a party to the collective agreement, and bound by the arbitrator’s determinations, is not, and cannot be, disputed. Nor can Reisman in this proceeding now before me escape from the arbitrator’s holding that Re-Anne is its subsidiary. But, as that determination is not binding upon Re-Anne, I must look to the proof presented to me to ascertain whether Re-Anne’s records are to be submitted to the arbitrator in pursuance of the subpoenas. I find quite easily that the chairman’s determination as to the tie-up between Reisman and Re-Anne has adequate basis in the facts presented not alone before him but before me. Let me mention some of them: Reisman and Re-Anne both occupy the same premises. At these premises. Re-Anne’s name does not appear on the directory. Rent was not paid by Re-Anne directly to Reisman, but instead Re-Anne made certain purchases from Reisman, payment for which included rent, office and telephone charges. The president of Re-Anne was employed during 1951 and 1952 as a shipping clerk by Reisman. For a period of time, the secretary of Reisman was also secretary of Re-Anne. The telephone company records list Re-Anne as a subsidiary of Reisman. When retirement fund representatives have visited the premises they never found anyone who admitted connection with Re-Anne. The papers before me clearly show — at the least — a prima *721 facie close relationship between Reisman and Re-Anne. The arbitrator held that, under the agreement, Reisman is obligated to pay to the fund not only on the basis of its own direct payrolls, but as measured as well by those of Re-Anne. Sufficient has been shown to warrant the impartial chairman in seeking to examine appropriate records of Re-Anne in his quest to ascertain the amount due by Reisman to the fund under the agreement.
The statute specifically provides that arbitrators selected as prescribed by law or otherwise have the power to “ require any person to attend before them as a witness ” (Civ. Prac. Act, § 1456) and authorizes the arbitrator to issue a subpoena requiring such person to come before him, “ and also, in a proper case, to bring with him a book or a paper ”. (Civ. Prac. Act, § 406, subd. 1.) Whether Re-Anne is a party to the collective agreement or not, the statute gives the impartial chairman the power to issue the subpoenas duces tecum in his capacity as arbitrator, subject to the limitations imposed by the statute ■— i.e., he can compel the production of books and records only in a proper case. In Carlisle v. Bennett (268 N. Y. 212, 218) “ a proper case ” was defined as “ ordinarily one where the books and papers called for have some relevancy and materiality to the matter under investigation.” In my view, this is clearly a proper case for the issuance of the subpoenas. Since the agreement provides that a member of the association shall pay to the fund a certain percentage of the total payroll of his inside shop and of the shops of his contractors and submanufacturers, and since Re-Anne has been held to be a subsidiary of Reisman, the latter is liable to the fund on the payrolls of Re-Anne and of Re-Anne’s contractors. I am satisfied that the sole purpose of the issuance of the subpoenas is to establish the amount due from Reisman to the fund. It seems reasonable to assume from the facts presented (and the petitioner has not shown anything to the contrary) that Re-Anne’s payments to its contractors, as shown by its checks and bank statements, will provide a basis for the impartial chairman to compute the total payrolls of the contracting shops, and hence to fix the amounts due from Reisman to the fund. It would appear, therefore, that the documents sought (limited as heretofore indicated) are relevant and material to the subject matter properly under investigation.
The petitioner asserts also that the subpoenas are so broad and vague as to constitute a “ fishing expedition ”. It is urged that a subpoena duces tecum must specify the document required and identify it specifically. As a practical matter that means *722 that the subpoena in this case must state that a check of a certain date for a specific amount made by a specific party was paid to a designated person — and as this quite obviously cannot here be done, the inquiry before the impartial chairman may be rendered abortive. In my view, the documents sought are specified with sufficient particularity in the present circumstances. Matter of Landegger (54 N. Y. S. 2d 76) is relied upon by the petitioner to support its contention. Mr. Justice Null there vacated certain subpoenas duces tecum, holding (p. 77) that “ [t]he contention is well made that the subpoenas are all embracing and fail to identify with any degree of particularity many of the books and records required. There is, however, the broader consideration that it does not appear that the enumerated documents will tend to be evidentiary upon the issues to be adjudicated.” In the instant case, no such defects appear to be present. Only some of Re-Anne’s records are now sought, and these are described with a sufficient degree of particularity, namely, specified monthly bank statements and checks issued by Re-Anne during a designated period. There is as well no vagueness as to the purpose for which the documents are sought; they are wanted to aid in the computation of the payrolls of Re-Anne and of Re-Anne’s contractors so that Reisman may be assessed therefor. Moreover, it should here be noted what counsel seem to have overlooked — that on appeal (269 App. Div. 736) the Landegger ruling at Special Term was modified, and the subpoenas were reinstated, except that certain items were eliminated.
The motions to vacate and set aside the subpoenas duces tecum in their entirety are denied. The subpoenas are modified, however, so that those portions which the respondents have consented to be deleted are eliminated therefrom. The subpoenas should require the presentation of only the following material: (1) Monthly statements of Re-Anne from January, 1954, to date, excluding information pertaining to Re-Anne’s income. (2) Photo static copies or transcripts of all checks issued by Re-Anne from January 1, 1954 through August 25, 1955, on the Chemical account, and during the months of September, 1950, February, 1951, September, 1952, and February, 1953, on the Manufacturers account.
Settle orders accordingly.